******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# NORTHLAND INVESTMENT CORPORATION *v.*
# PUBLIC UTILITIES REGULATORY
# AUTHORITY
# (SC 20769)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Dannehy, Js.

*Syllabus*

Pursuant to statute (§ 16-262e (c)), the owner or landlord of a multiunit residential dwelling "shall be liable for the costs of all [utility services] furnished . . . to the building, except for any service furnished to any dwelling unit of the building on an individually metered or billed basis for the exclusive use of the occupants of that dwelling unit . . . ."

The plaintiff landlord, N Co., sought a declaratory ruling from the defendant, the Public Utilities Regulatory Authority (PURA), that it may use ratio utility billing (RUB) in recouping its costs for utility services from tenants in two multiunit residential buildings that did not have individual meters for each unit but, rather, had only a master meter. Under the RUB methodology, N Co. would bill its tenants for monthly utility charges on the basis of what it had determined to be their proportionate share of utility usage for the month, which could be calculated by N Co. on the basis of each unit's square footage and the number of bedrooms and occupants, among other factors. In its final decision, PURA concluded that RUB violates the plain meaning of § 16-262e (c) because that provision expressly prohibits charging a tenant for utility services the tenant did not exclusively use. Nevertheless, PURA explained that N Co. could use the "building in" methodology instead and build the estimated cost of utilities into the fixed rent charged to tenants each month. N Co. filed an administrative appeal from PURA's decision, and the trial court remanded the case to PURA for further consideration of whether PURA's decision that RUB violates § 16-262e (c) conflicts with its conclusion that the "building in" approach does not similarly violate the statute. PURA issued a supplemental decision in which it reaffirmed its prior ruling. N Co. appealed from PURA's supplemental decision to the trial court, which dismissed the appeal and rendered judgment thereon. Thereafter, N Co. appealed from the trial court's judgment.

*Held* that the trial court did not err in upholding PURA's determination that § 16-262e (c) prohibits N Co.'s proposed use of RUB to recoup building wide utility costs by billing tenants for their estimated, proportionate share of the total cost of the utilities:

Pursuant to § 16-262e (c), a property owner or landlord of a multiunit dwelling is "liable" for the utility costs, but a tenant may be liable for

the utility cost when he or she is serviced on an individually metered or billed basis for his or her exclusive use of the utility.

Because the language of the statute and the dictionary definitions of "liable" did not specify to whom a tenant would have to be liable, the utility company or the landlord, to violate the statute, and because § 16-262e (c) does expressly allow, under certain circumstances, for the allocation of estimated costs for units without individual meters, this court concluded that § 16-262e (c) was ambiguous with respect to that issue.

Accordingly, this court looked to the legislative history of that provision, which demonstrated that the provision was promulgated to provide consumer protections to tenants in multiunit residential buildings with a master meter, and, because this court was required to interpret the statutory provision broadly to achieve its remedial purpose, it construed "liable" to mean that the tenant may not be held liable to anyone for the cost of a utility that he or she has not exclusively used.

Moreover, states that have legislation that explicitly authorizes the use of RUB also have statutes that provide numerous protections for tenants, whereas Connecticut, in contrast, lacks any such explicit provisions permitting the use of RUB or defining the protections for tenants in such situations.

In the present case, under the RUB methodology, a tenant's monthly utility bill represents the tenant's estimated, proportionate share of the total utility consumption, which N Co. would calculate based on factors that it would select in its sole discretion, and, therefore, N Co.'s use of the RUB methodology would violate § 16-262e (c) insofar as it would render a tenant liable to N Co. for the costs of utilities that were not individually metered or that the tenant did not exclusively use.

Furthermore, N Co. could not prevail on its claim that, if § 16-262e (c) prohibits landlords from utilizing the RUB methodology, then it also must prohibit the "building in" approach deemed acceptable by PURA, as the "building in" approach, which allows a landlord whose multiunit building operates with a master meter to build the estimated, annual utility costs into the monthly rent for each unit, is entirely consistent with standard practices regarding the setting of rent and is governed by title 47a of the General Statutes, which does not prohibit such a practice.

In addition, the "building in" approach also is more consistent with the remedial statutory scheme than the RUB method, as it allows for tenants to have consistent and predictable payments each month and places the risk that the tenants may use more utilities than anticipated each month on the landlord.

(*Three justices dissenting in one opinion*)

Argued October 18, 2023—officially released May 7, 2024

*Procedural History*

Appeal from the supplemental decision of the defendant finding that the plaintiff's use of ratio utility billing was not authorized by law, brought to the Superior Court in the judicial district of New Britain, where the court, *Cordani, J.*, granted the motion to intervene filed by the Office of Consumer Counsel; thereafter, the case was tried to the court, *Henry S. Cohn*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment dismissing the plaintiff's appeal, from which the plaintiff appealed. *Affirmed.*

*David A. Ball*, with whom was *David E. Dobin*, for the appellant (plaintiff).

*Robert L. Marconi*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (defendant).

*William E. Dornbos*, legal director, with whom, on the brief, were *Thomas H. Wiehl*, director of utility oversight and regulatory reform, and *Andrew W. Minikowski*, staff attorney, for the appellee (intervenor Office of Consumer Counsel).

*Opinion*

McDONALD, J. This case resolves the question of whether a landlord of a multiunit residential building may recoup from its tenants the costs for utility services that it is liable to pay to a utility provider when the building does not have individual meters for each unit but, rather, has only a master meter. The plaintiff, Northland Investment Corporation, manages and owns multiunit residential buildings throughout the United States, including Connecticut. In its buildings that have only a master meter for the entire building, the plaintiff employs, or seeks to employ, a recoupment method it refers to as "ratio utility billing" (RUB). Under the RUB method, as developed by the plaintiff, it pays the utility company

directly for the building's entire utility bill and then recoups the cost from the tenants in the form of a variable utility payment each month. Under this form of billing, the plaintiff bills each tenant directly for what the plaintiff contends is the tenant's "proportionate share" of utilities based on factors it has chosen (which it can modify in its sole discretion), such as a unit's square footage, number of occupants, number of bedrooms and bathrooms, or a combination of these. This method of utility billing is included in a provision of the plaintiff's lease agreements.

The plaintiff sought a declaratory ruling from the defendant, the Public Utilities Regulatory Authority (PURA), that it may use RUB in recouping its costs for utility services from tenants. PURA concluded that the plaintiff was not authorized to do so. In the administrative appeal that followed, the trial court upheld PURA's decision. Both of the parties rely on General Statutes § 16-262e (c) in support of their respective arguments. Section 16-262e (c) governs the liability for payment of utility services provided to residential dwellings. The plaintiff argues that the plain meaning of § 16-262e (c) does not expressly prohibit the use of RUB. Because RUB is not expressly prohibited by law, the plaintiff argues, the method qualifies as a payment of "rent" under General Statutes (Supp. 2024) § 47a-1 (h). PURA disagrees and instead argues that RUB violates the plain meaning of § 16-262e (c) because the provision allows a tenant to be liable for utility costs only if the tenant's unit is individually metered and he or she has exclusively used the utilities so provided.[1] We agree with

---

[1] The Office of Consumer Counsel (OCC) is an intervenor in this matter and, as such, filed a brief in this appeal. The OCC is an independent government agency, within the Department of Energy and Environmental Protection, designated by statute as the advocate for all consumers of the state's regulated electric, natural gas, water, and telecommunications utilities, as well as the customers of electric suppliers. See General Statutes § 16-2a (a). Section 16-2a (a) authorizes the OCC "to appear in and participate in any regulatory or judicial proceedings, federal or state, in which such interests

PURA and conclude that § 16-262e (c) precludes a landlord's use of RUB to recoup utility service charges from tenants.

We begin with an overview of this state's statutory scheme governing utility billing and its relationship to landlord-tenant law. Historically, landlords in Connecticut who owned multiunit residential buildings with a master meter would estimate the cost they would likely incur for utilities that year and build that figure into each unit's monthly rent.[2] See, e.g., Conn. Joint Standing Committee Hearings, Energy and Public Utilities, Pt. 1, 1984 Sess., p. 387, remarks of Attorney Raphael Podolsky. Problems arose, however, when landlords attempted to shift the responsibility for paying the building's utility bill to their tenants. For example, a landlord could insist that one tenant in a multiunit building pay the cost for the entire building's utility bill and then collect payments from the other tenants. See id., p. 384, remarks of Attorney Edward Dale. In 1984, in an effort to provide consumer protections for tenants against these practices, the General Assembly passed No. 84-321 of the 1984 Public Acts (P.A. 84-321), titled "An Act Concerning Residential Utility and Heating Fuel Accounts" (act), which was codified at General Statutes (Rev. to 1985) § 16-262e (c). The purpose of the act was to ensure that, in instances in which a multiunit residential building has only one master meter rather than individual meters or submeters for each unit, the landlord would be liable for the utility bill. See 27 H.R. Proc., Pt. 9, 1984 Sess., p. 3274, remarks of Representative David Lavine (stating that bill "clarifies" that "it is [the] property owner's duty to provide heat and utility service for an apartment unless that unit can be individually metered").

of Connecticut consumers may be involved . . . ." The arguments made by the OCC largely track those of PURA.

[2] General Statutes (Supp. 2024) § 47a-1 (h) defines "rent" as "all periodic payments to be made to the landlord under the rental agreement."

The plaintiff in this case owns two multiunit residential buildings in the state.[3] These properties receive gas, electric, steam, chilled water, and water and sewer services from public service utility companies. The plaintiff sought to use RUB to bill tenants for the utilities it provides that are not otherwise individually metered.[4] Under the RUB method, when there is a master meter, the plaintiff is billed directly by the utility company for all of its tenants' utility usage. When the plaintiff receives the utility bill each month, it then separates the monthly charges and bills its tenants based on what the plaintiff has determined as their "proportionate share of the collective consumption . . . captured by the master meter . . . ." Each tenant's share is calculated based on factors that are chosen by the plaintiff, such as a unit's square footage, the number of occupants in the unit, and the number of bedrooms and bathrooms. At oral argument, the plaintiff's attorney affirmatively stated that RUB would not be used to recoup utility costs for common areas, such as hallways, garages or elevators, but the plaintiff's sample lease outlining the plaintiff's RUB calculation framework specifically permits it: "Under any allocation method, [the tenant] may be paying for part of the utility usage in common areas or in other residential units as well as administrative fees." The administrative fees that could be charged to the tenants by the plaintiff are not defined or limited in the sample lease. The sample lease also makes clear that this "allocation method may or may not accurately reflect actual total utility consumption . . . ." Furthermore, the sample lease provides that the plaintiff may amend the methodology for calculating a tenant's "allocated share of utilities and services and all other billing methods, in [its] sole discretion . . . ." Finally, the

---

[3] The first is located at 221 Trumbull Street in Hartford, and the second is located at 55 Main Street in Enfield.

[4] Specifically, the plaintiff seeks to use RUB to calculate the bills for tenants for gas, water, and sewer services.

sample lease states that, should the tenant fail to pay the tenant's allocated share of the plaintiff's utility bill, as determined in the sole discretion of the plaintiff, within seven days of the date of issue, the tenant will be subject to a late fee, and specifies that a late payment or failure to pay the utility bill is a "material and substantial breach of the [l]ease" for which the plaintiff may "exercise all remedies available . . . up to and including eviction . . . ."

The plaintiff filed a petition for a declaratory ruling with PURA, seeking a declaration that § 16-262e (c) would not prohibit the plaintiff from using RUB to charge its tenants for utility costs the plaintiff is liable to pay. In its final decision, PURA concluded that RUB violates the plain meaning of § 16-262e (c) because that provision "expressly prohibits charging a tenant for utility services [the tenant] did not exclusively use." PURA explained that, although the plaintiff cannot use RUB to bill tenants for their utility usage, in accordance with § 16-262e (c) and historical metering practices, it could build the estimated cost of utilities into the fixed rent charged to tenants each month ("building in" approach) as provided in their leases, thereby resulting in a consistent monthly payment. In other words, PURA concluded that billing tenants for utilities on the back end (i.e., each month after the bill is paid by the plaintiff) is prohibited but that forecasting in advance what a unit's yearly utility usage will be, and building that figure into the monthly rent at the time the lease is signed, does not violate the statute.

The plaintiff filed an administrative appeal from that decision. The trial court remanded the case to PURA for further consideration of whether PURA's decision that RUB violates § 16-262e (c) conflicts with its conclusion that the "building in" approach does not similarly violate the statute. PURA issued a supplemental decision in which it reaffirmed that the "building in" approach

does not violate § 16-262e (c) and explained that such an approach is "nothing more than the ordinary process by which a landlord calculates and charges rent" rather than provide a direct bill for utilities. The plaintiff appealed from PURA's supplemental decision to the trial court, which dismissed the appeal and rendered judgment thereon. The plaintiff then appealed from the trial court's judgment to the Appellate Court, and we transferred the appeal to this court.

On appeal, the plaintiff contends that the trial court erred in upholding PURA's determination that § 16-262e (c) prohibits the plaintiff's proposed use of RUB to recoup building wide utility costs by billing tenants for their estimated proportionate share of the total cost.

Judicial review of an administrative agency's determinations is governed by the Uniform Administrative Procedure Act and is ordinarily restricted in scope, with the court's "ultimate duty" being to decide, "in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343, 757 A.2d 561 (2000). "Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *1st Alliance Lending, LLC* v. *Dept. of Banking*, 342 Conn. 273, 280, 269 A.3d 764 (2022). Whether § 16-262e (c) prohibits the plaintiff's use of RUB is a question of statutory interpretation

over which our review is plenary. See, e.g., *LaFrance* v. *Lodmell*, 322 Conn. 828, 833–34, 144 A.3d 373 (2016).

Review of § 16-262e (c) and the relevant statutory scheme must be in accordance with General Statutes § 1-2z and the familiar principles of statutory construction. See, e.g., *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45–46, 213 A.3d 1110 (2019). The meaning of § 16-262e (c) must, in the first instance, "be ascertained from the text of the statute itself and its relationship to other statutes." General Statutes § 1-2z.

The plaintiff concedes the remedial nature of the consumer protections contained in § 16-262e. Notwithstanding that concession, the plaintiff contends that PURA's interpretation of § 16-262e (c)—which prohibits landlords from using RUB—violates the plain meaning of the statute. Specifically, the plaintiff contends that, because § 16-262e (c) does not expressly prohibit landlords from recouping their utility costs from tenants, RUB is permitted. For its part, PURA argues that RUB violates the plain meaning of § 16-262e (c) because it holds a tenant ultimately liable for the payment of utilities not exclusively used by the tenant. It reasons that, under the RUB method, even though the utility bill is initially in the plaintiff's name, the tenant is ultimately responsible for, and liable to, the plaintiff for the payment of the share of the bill that the plaintiff has assigned to the tenant under the RUB formula. PURA effectively argues that the plaintiff cannot accomplish indirectly that which it is precluded from doing directly.

We begin with the text of the statute. Section 16-262e (c) provides in relevant part that "[t]he owner, agent, lessor or manager of a residential dwelling shall be liable for the costs of all electricity, gas, water or heating fuel furnished by a public service company, electric supplier, municipal utility or heating fuel dealer to the

building, except for any service furnished to any dwelling unit of the building on an individually metered or billed basis for the exclusive use of the occupants of that dwelling unit . . . ." In short, § 16-262e (c) sets out the general rule that a property owner of a multiunit dwelling is "liable" for the utility costs and then provides an exception to this rule: when a tenant is serviced on an individually metered or billed basis for his or her exclusive use of the utility, then that tenant may be liable for the utility cost. Accordingly, whether RUB is permitted under § 16-262e (c) turns on the meaning of the term "liable."

Because there is no statutory definition of the term "liable," we begin with the dictionary definitions of the term. See, e.g., *Seramonte Associates, LLC* v. *Hamden*, 345 Conn. 76, 84, 282 A.3d 1253 (2022). Ballentine's Law Dictionary defines "liable" as "[u]nder liability or legal responsibility." Ballentine's Law Dictionary (3rd Ed. 1969) p. 732. It defines "liability" as "[t]he condition of being bound in law and justice to pay an indebtedness or discharge some obligation." Id. Significantly, the definition of "liability" goes on to state that "liability" is a "word of different meanings, the pertinent one to be gathered from the context in which it appears, construed in the light of surrounding circumstances." Id.; see also, e.g., S. Gifis, Law Dictionary (2d Ed. 1984) p. 270 (defining "liable" as "to be responsible for" or "to be obligated in law"); The American Heritage College Dictionary (4th Ed. 2007) p. 797 (defining "liable" as "[l]egally obligated" or "responsible"). Section 16-262e (c) does not specify to whom the liability is directed, the utility company or the landlord. If § 16-262e (c) specified that it governed only liability to the utility company, we would have to agree with the plaintiff's contention that RUB does not violate the statute because RUB does not make the tenant liable to the utility company for payment of the utility bill. If, on the other

hand, § 16-262e (c) specified that it precluded a tenant from being liable in any respect for utility payments other than those due as a result of the tenant's exclusive use of the utility on an individually metered basis, we would have to agree with PURA's determination that RUB violates the statute. Because the language of the statute and the dictionary definitions of "liable" do *not* specify to whom a tenant would have to be liable to violate the statute, we conclude that § 16-262e (c) is ambiguous in this respect. See, e.g., *State* v. *Josephs*, 328 Conn. 21, 26, 176 A.3d 542 (2018) (stating that "[a] statute is ambiguous if, when read in context, [it] is susceptible to more than one reasonable interpretation" (internal quotation marks omitted)).

The relevant statutory language is ambiguous for an additional reason. The plain language of the statute does envision a circumstance in which utility costs are borne or shared by tenants even when there is no individual metering, namely, when the landlord "fails to pay for such service, [in which case] any occupant who receives service in his own name may deduct, in accordance with the provisions of subsection (d) of this section, a reasonable estimate of the cost of any portion of such service which is for the use of occupants of dwelling units other than such occupant's dwelling unit." General Statutes § 16-262e (c). This provision thus does expressly allow, under certain specified circumstances, for the allocation of estimated costs in units without individual meters. However, this provision does not provide that it is the only situation in which the legislature envisioned the use of estimated costs. But cf. *Commission on Human Rights & Opportunities* v. *Edge Fitness, LLC*, 342 Conn. 25, 36–37, 268 A.3d 630 (2022) (inclusion of statutory exception addressing one situation indicates that legislature could have added additional exception to antidiscrimination statute had it desired to do so).

Given this ambiguity, we therefore "look for interpretive guidance to the legislative history and circumstances surrounding [the statute's] enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Hernandez* v. *Apple Auto Wholesalers of Waterbury, LLC*, 338 Conn. 803, 815, 259 A.3d 1157 (2021).

The legislative history reveals that § 16-262e was intended to provide consumer protections for tenants and is remedial in two respects. First, it clarifies that only a landlord is liable for utility bills if the building has a master meter. See 27 H.R. Proc., supra, p. 3274, remarks of Representative Lavine; see also Conn. Joint Standing Committee Hearings, supra, pp. 382–83, remarks of Attorney Dale ("tenants are unfairly saddled with utility bills for service[s] that they do not actually use in their own apartments"); Conn. Joint Standing Committee Hearings, supra, p. 383 ("someone should only be responsible in terms of the utility bill . . . for the service that they're actually receiving"). Second, it provides a remedy for tenants that did not previously exist by allowing tenants, in an instance in which the landlord has failed to pay a utility bill from a master meter, to accept service in their own names for the utility bill and then to deduct from the rent the amount that they reasonably estimate not to be attributable to their own exclusive use. See General Statutes § 16-262e (c) and (d). As we noted, the plaintiff concedes that the act is remedial in nature and was promulgated to "absolutely [protect] tenants."

As we discussed, the General Assembly added subsection (c) to § 16-262e in 1984 when it enacted P.A. 84-321. Subsection (a) of § 16-262e works in tandem with subsection (c) by providing that a utility company may not terminate utility service to a multiunit residen-

tial dwelling if it is not occupied exclusively by the owner unless the utility company (1) "makes a good faith effort to notify the occupants," and (2) provides an opportunity, when practicable, for occupants to receive service in their own names. Speaking in support of the amendment on the House floor, Representative Lavine stated that the act "makes it clear that it is [the] property owner's duty to provide heat and utility service for an apartment *unless that unit can be individually metered.* It's important that this be clarified because there have been a number of instances [in which] tenants have found themselves responsible for collecting or trying to collect utility payments which they have been forced to make for other apartments in the building. This would make it crystal clear that if that occurs, the tenant can deduct a reasonable amount from his rent in order to get equity." (Emphasis added.) 27 H.R. Proc., supra, pp. 3274–75. Section 16-262e (a) also provides that, in a circumstance in which it is not practicable for tenants to receive service in their own names, the utility company may not terminate service but may pursue the remedy provided in General Statutes §§ 16-262f and 16-262t, which allows the utility company to petition the trial court to appoint a receiver, who will collect the utility payments from tenants. Subsections (a) and (c) of § 16-262e, then, ensure that tenants are not liable for the costs of utilities they have not exclusively used and that utilities serving multiunit residential dwellings are not shut off because of the failure of a landlord to pay. This contrasts with the circumstances of a typical, single unit dwelling where the owner resides at the property, and the utility company can, after providing notice, and subject to certain other requirements and exceptions, shut off the utility. See General Statutes § 16-262d. In sum, the legislative history strongly supports the conclusion that, "if you can individually provide the service to an apartment, then the tenant can

be made responsible for paying for it. . . . If, for whatever reason, the building is so constructed, or the metering system is so arranged, you can't divide that, then that becomes a landlord responsibility." Conn. Joint Standing Committee Hearings, supra, p. 387, remarks of Attorney Podolsky.

It is a well established principle of statutory interpretation that "remedial statutes should be construed liberally in favor of those whom the law is intended to protect . . . ." (Internal quotation marks omitted.) *Hernandez* v. *Apple Auto Wholesalers of Waterbury, LLC*, supra, 338 Conn. 815. The legislative history surrounding § 16-262e (c) makes clear that the provision's purpose is to provide consumer protections to tenants in multiunit residential buildings with a master meter. Accordingly, because we must construe the statute broadly to achieve its remedial purpose, we must construe "liable" to mean that the tenant may not be held liable *to anyone* for the cost of a utility that he or she has not exclusively used. RUB impermissibly makes the tenant liable to the landlord for the utility payments because the tenant is responsible for, and bound to make, the payment charged to him or her each month pursuant to the lease agreement. Should the tenant fail to remit such payment, he or she is subject to a late fee and risks eviction. Indeed, the sample lease provided by the plaintiff explicitly states that a late payment or failure to pay a utility bill is a "material and substantial breach of the [l]ease" for which the landlord may evict the tenant. Furthermore, this court has established that, in cases such as this, in which the court must construe a remedial statute, it "should not read into [the] remedial statute an unstated exception that would undermine the legislature's manifest intent . . . ." *Commission on Human Rights & Opportunities* v. *Sullivan Associates*, 250 Conn. 763, 781–82, 739 A.2d 238 (1999). Allowing a landlord to mandate that a tenant be liable

for utility payments calculated using RUB would qualify as such an "unstated exception," contrary to the legislature's clear intent.

Finally, we note that several states have legislation that explicitly permits the use of RUB. See, e.g., Minn. Stat. Ann. § 504B.215 (2a) (West 2023); Or. Rev. Stat. § 90.562 (1) (c) (2023). These states, however, have statutes that provide numerous protections for tenants. For example, Minnesota's statute requires landlords to provide tenants in "single-metered residential building[s]" that apportion utility costs with, upon request, copies of the total utility bills for the building and notice of the availability of energy assistance programs for low income individuals. Minn. Stat. Ann. § 504B.215 (2a) (a) (3) and (b) (West 2023). Similarly, Oregon's statute limits the landlord's right to use "pro rata" billing for garbage removal and provides that utility charges may not constitute "rent" under the lease agreement, while specifying circumstances under which a landlord may seek to evict for nonpayment of utility charges. Or. Rev. Stat. § 90.562 (2) and (4) (2023). Connecticut lacks any such explicit provisions permitting the use of RUB or defining the protections for consumers in such situations. Should the legislature decide to evaluate all the possible ramifications of permitting RUB, it is, of course, free to do so.

Applying this construction to the utility services in the present case, we conclude that RUB does not satisfy the exception to the general rule that the property owner is "liable" for the cost of the utility service because the payments made under the RUB method are not for utility service that the tenant exclusively used. As the plaintiff's sample lease expressly provides, the amounts charged to a tenant under the RUB method "may or may not accurately reflect actual total utility consumption" by the tenant. Rather, RUB uses an estimate based on factors selected in the sole discretion

of, and subject to unilateral amendment by, the plaintiff. The use of RUB by landlords in this context therefore violates § 16-262e (c) by making the tenant liable to the landlord for the costs of utilities that were not individually metered or that the tenant did not exclusively use.

The plaintiff nevertheless argues that, if § 16-262e (c) prohibits landlords from utilizing RUB, then it must also prohibit the "building in" approach deemed acceptable by PURA. We disagree. The "building in" approach is plainly not equivalent to RUB. Under the "building in" approach, landlords whose buildings operate with master meters estimate the cost they will incur for utilities that year and build that figure into the monthly rent. Such a practice is entirely consistent with standard practices regarding the setting of rent. Although not enumerated, the cost of rent often reflects not only a profit to a landlord, but also the costs associated with property ownership, such as mortgages, maintenance costs, capital repairs, real and personal property taxes, insurance, etc. Such costs, including estimated yearly utility costs, appropriately fall under the definition of "rent" under General Statutes (Supp. 2024) § 47a-1 (h) because they are included in the periodic payments made to the landlord under the rental agreement. As such, the "building in" approach is governed by title 47a of the General Statutes, and nothing in title 47a prohibits such a practice. RUB, on the other hand, which allows for a separate and variable bill to be sent to the tenant each month, is a *utility bill* that is governed by title 16 of the General Statutes. Title 16, and more specifically § 16-262e (c), *does* prohibit RUB because § 16-262e (c) does not allow for a tenant to be made liable for the payment of utilities other than for those which the tenant exclusively used. Notably, the "building in" approach allows for tenants to have consistent and predictable payments each month and

places the risk that the tenants may use more utilities than anticipated each month on the landlord. This is a preferable system in this remedial statutory scheme because, under the RUB method, the tenant has no control over the utility usage of other units within the building and could be forced to subsidize a large utility bill despite the tenant's own best efforts to keep costs to a minimum.[5]

CONCLUSION

We conclude that § 16-262e (c) prohibits the plaintiff's proposed use of a RUB system to recoup its building wide utility costs by billing tenants for their estimated share of the total cost.

The judgment is affirmed.

In this opinion D'AURIA, ALEXANDER and DANNEHY, Js., concurred.

---

[5] The dissent takes issue with our determination that the "building in" approach is acceptable whereas RUB is not. See part II of the dissenting opinion. The dissent points out that the "building in" approach results in tenants effectively subsidizing the utility consumption of the other tenants in the building, which is an issue with RUB as well. See id. The key difference, however, as stated in this opinion, is that, under the "building in" approach, tenants have a consistent and predictable monthly payment. If a landlord underestimates the cost of utilities in a given year, it is the landlord who must absorb the cost. Under the RUB method, however, not only do the tenants subsidize the utility consumption of their neighbors, but they have absolutely no control over, and cannot predict, the amount that is due each month to cover the utilities of the building. It is these two factors that exist under the RUB method that, combined, make the system unreasonable in the absence of legislation that authorizes, and places parameters around the use of, RUB.